Matthew Mellen (Bar No. 233350)
MELLEN LAW FIRM
1050 Marina Village Parkway, Suite 102
Alameda, CA 94501
Telephone:    (510)263-9638
Facsimile:    (415) 276-1902
Email:        email@mellenlawfirm.com

Attorney for Plaintiffs,
NIKOLAOS PSARAKIS and PENAGIOTA PSARAKIS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nikolaos Psarakis, an individual; Panagiota Psarakis, an individual; Micheal Xyntaras, an individual; Star Natural Meats 1, Inc, a business entity; Old Fashion Butcher Shop, Inc, a business entity.<br><br>        Plaintiffs,<br><br>    v.<br><br>World Business Lenders, LLC, a business entity; Redwood Trust Deed Services, Inc; a business entity; Wayne R. Fricke, Trustee, et al. c/o Redwood Trust Deed Services, a business entity; Peter Boudouvas, an individual; DOES 1 through 10, inclusive<br><br>        Defendants. | Case No.: **3:20-mc-80218**<br><br>**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date:<br>Time:<br>Location:<br><br>Hon. Magistrate Judge<br><br>Complaint Filed:<br>Trial Date:          None Set |

Plaintiffs NIKOLAOS PSARAKIS and PENAGIOTA PSARAKIS (hereinafter, "Plaintiffs"), hereby submit this Ex Parte Application for a Temporary Restraining Order of the impending Foreclosure Sale of Plaintiffs' home located at 4670 Heyer Avenue, Castro Valley, CA 94546 ("SUBJECT PROPERTY"), currently scheduled to be sold at foreclosure at 9:30 AM on December 17, 2020. Plaintiffs make this Application pursuant to Fed. Rules of Civ. Pro., Rule 65.

Notice of this Ex Parte Application was unable to be provided to all parties in this action prior to the filing. Due to the emergency nature of the action, this Ex Parte Application was drafted over the weekend and filed before 9:00 A.M. on Monday, December 14, 2020. Notice of this Ex Parte Application will be given by Monday at 10:00AM.

For the reasons set forth in this application, the Memorandum of Points and Authorities, and the attached declarations, good cause exists to grant Plaintiffs' Ex Parte Application for a Temporary Restraining Order.

DATED: December 14, 2020

Respectfully submitted,

MELLEN LAW FIRM

*/s/ Matthew Mellen*
Matthew Mellen
Attorney for Plaintiffs
NIKOLAOS and PANAGIOTA
PSARAKIS

1

# TABLE OF CONTENTS

**I.**     **INTRODUCTION** .................... **ERROR! BOOKMARK NOT DEFINED.**

**II.**    **STATEMENT OF FACTS** ........................................................ 2

**III.**   **LEGAL ARGUMENT** .............................................................. 5

    A.     Legal Standard ................................................................ 6

    B.     Plaintiffs Are Likely to Succeed on The Merits of Their Claims. ........ 6

        1.     Plaintiffs Are Likely to Succeed on the Merits on their Claim for Conversion. ........................................................ 6

        2.     Plaintiffs Are Likely to Succeed on the Merits on Their Claim for Fraud. ........................................................ 7

        3.     Plaintiffs Are Likely to Succeed on the Merits of Their Claim for Breach of Fiduciary Duty. ........................................ 9

        4.     Plaintiffs Are Likely to Succeed on the Merits of Their Claim for Breach of Implied Covenant of Good Faith and Fair Dealing. ........................................................ 11

        5.     Plaintiff Is Likely to Succeed on the Merits on the Claim for Unjust Enrichment ............................................... 12

    C.     Plaintiff Will Suffer Irreparable Harm in the Absence of this Relief. ...................................................................... 15

    D.     The Balance of Hardship Overwhelmingly Favors Plaintiff. ............. 15

    E.     The Relief Requested is in the Best Interest of the Public. ................ 16

**IV.**    **CONCLUSION** ........................................................................ 17

# TABLE OF AUTHORITIES

**CASES**

*Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ............................. 6

*Amtower v. Photon Dynamics, Inc.*, 158 Cal.App.4th 1582 (2008) ............................... 10

*Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668 (9th Cir. 1988) ....................... 6

*Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654 (1958) .................................. 11

*Federal Deposit Ins. Corp. v. McSweeney*, 772 F.Supp. 1154 (S.D.Cal.1991) ............... 10

i

*Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996)..................................................................12

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415
    US 423 (1974)............................................................................................................5

*Gutierrez v. Girardi*, 194 Cal.App.4th 925 (2011)..........................................................9

*Hodges v. County of Placer*, 41 Cal.App.5th 537 (2019) ..............................................10

*Real Estate Analytics, LLC v. Vallas*, 160 Cal.App.4th 463 (2008) .............................15

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12 (1st Cir. 1996).............14

*Salahutdin v. Valley of California, Inc.*, 24 Cal.App.4th 555 (1994) ..............................9

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009)................................................6

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832 (9th Cir.
    2001) ..........................................................................................................................5

*Wheat v. Thomas*, 209 Cal. 306 (1930) ..........................................................................15

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)..............................6, 16

*Wolf v. Superior Court*, 107 Cal.App.4th 25, *as modified on denial of reh'g* (March
    20, 2003) ...................................................................................................................10

## STATUTES

Cal. Civ. Code § 1572...........................................................................................................7

Cal. Civ. Code § 2924.12(a)(2)...........................................................................................15

Cal. Civ. Code § 2924h(g) ..................................................................................................16

Cal. Civ. Code § 3294 ...................................................................................................12, 13

Cal. Civ. Code § 3387..........................................................................................................15

Cal. Civ. Code §1710............................................................................................................7

## OTHER AUTHORITIES

Mortgagee Letter 2020-27 (Aug. 27, 2020), retrieved on Dec. 13, 2020 from
    https://www.hud.gov/sites/dfiles/OCHCO/documents/2020-27hsgml.pdf............16

## I.   **INTRODUCTION**

Plaintiffs NIKOLAOS PSARAKIS and PENAGIOTA PSARAKIS, along with their family businesses, (hereinafter, "Plaintiffs") bring suit for the misconduct, misrepresentations, and mishandling of their loan by Defendant PETE BOUDOUVAS (hereinafter, "Defendant BOUDOUVAS"), Defendant WORLD BUSINESS LENDERS, and Defendant WAYNE R. FRICKE, TRUSTEE, ET AL. C/O REDWOOD TRUST DEED SERVICES, INC (hereinafter, "Defendant FRICKE") (collectively, "Defendants").

Plaintiffs wanted to obtain a $600,000.00 loan on their family residence. At the time, the home was only encumbered by $300,000 with substantial equity to cover the financing. Plaintiffs are immigrants from Greece who reached out to the Greek community to find someone who would assist them in finding a loan, and they were introduced to Defendant BOUDOUVAS, who held himself out as an independent broker; however, his conduct shows that he was an agent of the other two defendants.

Defendant BOUDOUVAS immediately told Plaintiffs to transfer title of their home to their family businesses. Although Plaintiffs were prepared and had enough equity to obtain a traditional mortgage loan, Defendant BOUDOUVAS misrepresented to Plaintiffs that this would be a short-term arrangement, allow for a quicker loan approval, and that he would refinance their loan into a more traditional loan within weeks.  Defendant BOUDOUVAS entered Plaintiffs into a loan agreement that required exorbitant interest rates, causing Plaintiffs to pay nearly $3000 every other day. (EXHIBIT A). Coupled with the outrageous interest was the random assignments of payments to interest and principal.  After converting thousands of dollars, Defendant BOUDOUVAS induced Plaintiffs into another, albeit less onerous, loan designed to further encumber Plaintiffs' property making it

extremely difficult to obtain better financing. Now Plaintiffs are at risk of losing their home as a result of Defendants' deceptive and fraudulent practices.

Defendants misled Plaintiffs when communicating with Plaintiffs in connection with obtaining two separate loans on Plaintiffs' behalf and the required obligations of those loans. The Causes of Action that arise due to Defendants' misconduct include without limitation conversion, fraud, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, and Federal Unfair Debt Collection Practices Act.

Plaintiffs now faces an impending foreclosure sale of their home scheduled for December 17, 2020 at 9:30 AM.  Given the facts at hand, impact on Plaintiffs, and impact on the parties' rights, Plaintiffs requests that the Court grant the instant Application for Ex Parte Temporary Restraining Order.

## II.  STATEMENT OF FACTS

Plaintiff MICHAEL XYNTARAS is the person with whom Defendant BOUDOUVAS communicated most directly.  Decl. of Xytaras 4.  Plaintiff XYNTARAS is a successful butcher but is not a sophisticated businessperson. Likewise, his primary language is Greek, and he speaks little English.  Decl. of Xytaras 3. In fact, all Plaintiffs are immigrants from Greece who speak very limited English, which prompted them to look within the Greek community to find someone who could assist them find a loan with favorable terms.  Decl. of Xytaras 6.  Plaintiffs met Defendant BOUDOUVAS, who speaks Greek and held himself out as an independent broker.  Decl. of Xytaras 7.  At the time Plaintiffs met Defendant BOUDOUVAS, the SUBJECT PROPERTY was security for a $300,000.00 debt.  Plaintiffs wanted to obtain a loan on SUBJECT PROPERTY in the amount of $600,000.00.  Decl. of Xytaras 5.  Defendant BOUDOUVAS knew Plaintiff XYNTARAS was assisting his wife's mother and father, that he was not fluent in English, and would rely on Defendant BOUDOUVAS to communicate the terms of any financing agreements.

Defendant BOUDOUVAS told Plaintiffs to transfer title of SUBJECT PROPERTY to Plaintiff Star Natural Meats 1, Inc. and Plaintiff Old Fashion Butcher Shop, Inc. (hereinafter, "Family Businesses").  Although Plaintiffs would have accepted a traditional mortgage and had more than enough equity for a traditional mortgage, Defendant BOUDOUVAS represented to Plaintiff XYNTARAS that the property transfer would allow for a quicker loan approval, as opposed to traditional lending. Defendant BOUDOUVAS told Plaintiffs that he would enter into LOAN A for a period of a few weeks, at which time it would be refinanced into a traditional mortgage.  Decl. of Xytaras 3.

Defendant BOUDOUVAS obtained the first loan for Plaintiffs in July 2018 (hereinafter, "LOAN A").  The loan amount was for $645,000. The Daily APR (daily compounding interest rate) was 0.1917% (which is roughly 69% APR). Defendant World Business Lenders is the beneficiary of this loan. Defendant Fricke Wayne R Trust, is the servicer of LOAN A.  Decl. of Xytaras 10.

Plaintiffs paid almost $3,000 nearly every other day between August 2018 to January 2019. Plaintiffs made these payments over 80 times.  Decl. of Xytaras 12. Defendant World Business Lenders credited most Plaintiffs' payments as interest payments. In some cases, the entire payment was applied to interest with no amount applied to reduce the outstanding principal.  Decl. of Xytaras 13.  There is no explanation for the inconsistent and random distributions of Plaintiffs' payment to principal and interest. Being crushed by the weight of these payments, Plaintiffs began reaching out to Defendant BOUDOUVAS for the originally promised traditional mortgage.  Decl. of Xytaras 14.

In April 2019, Plaintiffs made a single payment of $600,000.00 to Defendant WORLD BUSINESS LENDERS. Despite this considerable payment that was only $45,000.00 less than the original loan amount, Plaintiffs later found out that the principal balance on the loan that they believed this would pay off was still more than $193,000.00.  Decl. of Xytaras 19.  Subsequently and unbeknownst to

Plaintiffs, the principal balance with Defendant WORLD BANK LENDERS therefore increased to $252,000.00 by April 2020.   Decl. of Xytaras 21.   The principal balance increased by another $90,362.00 on April 6, 2020, despite Plaintiffs paying another $18,643.00 to Defendant WORLD BANK LENDERS. Decl. of Xytaras 22.   Although it was Plaintiffs' understanding that they would no longer make payments to Defendant WORLD BUSINESS LENDERS, Plaintiffs were reported to still have a principal balance of $265,151.03 remaining with Defendant WORLD BANK LENDERS as of October 2020.  Decl. of Xytaras 24.

April 2019, Defendant BOUDOUVAS obtained LOAN B, another short-term loan with a balloon payment, for Plaintiffs.  Plaintiffs were induced to obtain LOAN B to make the substantial payment on LOAN A.  Defendant BOUDOUVAS represented that this would completely pay off LOAN A.  Decl. of Xytaras 15.  On April 30, 2019, Defendant FRICKE, the beneficiary of LOAN B, recorded a Deed of Trust (Subordination), taking priority over Defendant World Bank Lender's LOAN A lien. The loan amount was $615,000 at 12% yearly interest.  Decl. of Xytaras 17.

Defendant BOUDOUVAS, however, continued to promise that more traditional financing would become available soon. Plaintiffs proceeded to make payments for LOAN B from April 2019 to May 2020. Defendant BOUDOUVAS represented that it was no longer necessary to make payments on LOAN A, as they had repaid that loan; but that timely payments were necessary for LOAN B.  Decl. of Xytaras 20.  During the time between April 2019 and April 2020, Plaintiffs continued making those payments on LOAN B.  Near the end of the 2-year term set forth in LOAN B, Defendant BOUDOUVAS advised Plaintiffs that more traditional financing was coming and not to make payments on LOAN B, in anticipation of refinancing.  Decl. of Xytaras 23.

However, this refinancing was never to come. As a result, Plaintiff reached out to other sources for financing, losing trust in BOUDOUVAS to deliver on his

4

promises and feeling trapped by the cycle of short-term, balloon payment loans. It was at the time Plaintiffs sought financing from an uninterested, third-party, Defendant FRICKE suspiciously began recording a foreclosure. Furthermore, these communication regarding default and possible foreclosure were communicated to Defendant BOUDOUVAS. (EXHIBIT E). It was only when Plaintiff sought traditional financing elsewhere, that the outrageous remaining balance remaining from LOAN A was discovered.

But for this remaining balance Plaintiffs would be able to obtain favorable refinancing and pay off LOAN B. Plaintiffs now realize that all the actors have all been working in concert to convert hundreds of thousands of dollars and deprive Plaintiffs of their property.

## III.   <u>LEGAL ARGUMENT</u>

Plaintiffs request injunctive relief because they face the imminent foreclosure of the SUBJECT PROPERTY despite having always made payments as demanded by Defendant BOUDOUVAS on behalf of all Defendants. Plaintiffs have repeatedly represented to Defendant BOUDOUVAS a willingness to satisfy payment obligations. They simply want to keep their home without brokers and lenders taking advantage of them through misrepresentations and concealed relationships. Defendant BOUDOUVAS, with the assistance of all Defendants, trapped Plaintiffs in a cycle of excessive payments, rolling one bad loan into another. Now Plaintiffs are faced with eminent loss of their property.

Therefore, Plaintiffs requests that this Court grant Plaintiffs a Temporary Restraining so that the status quo might be maintained pending resolution of an Order to Show Cause why a Preliminary Injunction should be issued. <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers</u>, 415 US 423, 439 (1974) (purpose of a temporary restraining order is to preserve the status quo until the merits of the action can be determined).

5

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION

## A.   LEGAL STANDARD

In general, the showing required for a temporary restraining order and a preliminary injunction are the same.  <u>Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.</u>, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  <u>Winter v. Natural Resources Defense Council</u>, 555 U.S. 7, 20 (2008; <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009) (*quoting* <u>Winter</u>). The propriety of a temporary restraining order hinges on a significant threat of irreparable injury that must be imminent in nature.  <u>Caribbean Marine Serv. Co. v. Baldridge</u>, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the sliding scale approach, if the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in Plaintiffs' favor.  <u>Alliance for Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after <u>Winter</u>).

In the case at hand, a temporary restraining order should issue using either approach.  Plaintiffs have shown a likelihood of success on the merits and stand to be irreparably injured. Therefore, the Court should grant the requested temporary restraining order and set the matter for an Order to Show Cause why a Preliminary Injunction should not issue.

## B.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

### 1.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ON THEIR CLAIM FOR CONVERSION.

Liability for conversion exists where it is established that (1) Plaintiffs had

ownership rights or rights to possession of personal property; (2) Defendants disposed of Plaintiffs' property in a manner inconsistent with Plaintiffs' property rights; and (3) Plaintiffs suffered damages as a result.

Defendants clearly and wrongfully exercised control over Plaintiffs' personal property. After making the $600,000.00 payment to Defendant World Business Lenders, Plaintiffs were entitled to relief from the wrongly claimed principal balance of $193,000.00. (EXHIBIT A). Defendant World Business Lender was not entitled to the remaining balance, yet LOAN A continues to accumulate interest.

Defendants further hid LOAN A from Plaintiffs in order to increase the indebtedness on the property. Plaintiffs were not aware that the $193,000.00 was owed and still accumulating interest until he sought refinancing from an unrelated third party. Defendants' conduct reduces the available equity in SUBJECT PROPERTY making it more difficult for them to refinance. At all times, Plaintiffs have been ready and willing to make arrangements for long term, traditional financing.

For this reason, Plaintiffs believe they will succeed on the cause of action for conversion.

## 2. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ON THEIR CLAIM FOR FRAUD.

There are several varieties of fraud in California, which are enumerated in California Civil Code §1710. These include: concealment; an intentional misrepresentation; negligent misrepresentation; and false promise. Cal. Civ. Code § 1572 provides that "[a]ctual fraud [. . .] consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto [. . .]: 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. The suppression of that which is true, by one

7

having knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive."  Cal Civ. Code § 1572.

To state a claim for fraudulent concealment, Plaintiffs must show (1) the defendants must have concealed or suppressed a material fact, (2) the defendants must have been under a duty to disclose the fact to the plaintiffs, (3) the defendants must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiffs, (4) the plaintiffs must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiffs must have sustained damage.

To state a claim for intentional misrepresentation, Plaintiffs must show (1) a misrepresentation; (2) knowledge of the falsity of the statement, or "scienter;" (3) Intent to defraud, i.e., to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages.

To state a claim for negligent misrepresentation, Plaintiffs must show that: (1) Defendants made a representation as to a past or existing material fact; (2) Defendants made the misrepresentation without any reasonable basis for believing it to be true; (3) the representation was made with the intent to induce the plaintiffs to rely upon it; (4) Plaintiffs were unaware of the falsity of the representation and acted in justifiable reliance on the representation, and (5) damages.

To state a claim for false promise, Plaintiffs must show that: (1) Defendants made a promise to Plaintiffs; (2) Defendants did not intend to perform this promise when it was made; (3) Defendants intended that Plaintiffs rely on this promise; (4) Plaintiffs reasonably relied on Defendants' promise; (5) Defendants did not perform the promised act; (6) Plaintiffs were harmed; and (7) Plaintiffs' reliance on Defendants' promise was a substantial factor in causing his harm.

Here, Defendants committed multiple varieties of fraud, including but not limited to fraudulent concealment, intentional misrepresentation, negligent

8

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION

misrepresentation, and false promise.

The above-mentioned Defendants committed fraudulent concealment when they concealed the fact that they were working concert. Defendants had a duty to disclose this fact, but it was intentionally concealed. Defendants knew that if Plaintiffs were aware that Defendants were acting in concert to trap Plaintiffs into two separate ballooning loans, Plaintiffs would have sought other financing. Defendants' design is revealed by the sequence of events and the timing of the foreclosure actions. When Plaintiffs sought financing from a third party unaffiliated with Defendants, liens and foreclosure actions followed soon thereafter.

The above-mentioned Defendants committed intentional fraud and false promise by suggesting that LOAN A would only need to be paid for a few weeks at which time Defendant BOUDOUVAS would secure a tradition mortgage loan for Plaintiffs. However, Defendant BOUDOUVAS did not act and allowed Plaintiffs to make extremely high payments for nearly 9 months. (EXHIBIT A). Defendants also suppressed truthful information about the risky nature of the loan.

The above-mentioned Defendants committed negligent misrepresentation when they stated that entering into LOAN A and making several large lump sum payments would allow Plaintiffs to find a traditional mortgage loan. The representations were made with the intent to induce the plaintiffs to rely upon it so Defendants could fully encumber the SUBJECT PROPERTY, requiring extremely high payments of principal and interest. Plaintiffs were unaware that Defendants representations were untrue and acted in justifiable reliance on those representation.

For this reason, Plaintiffs believe they will succeed on the cause of action for fraud.

### 3. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM FOR BREACH OF FIDUCIARY DUTY.

To be liable for a breach of a fiduciary duty in California, there must be (1) a fiduciary duty owed, (2) a breach of that fiduciary duty; and damage proximately caused by the breach.   Gutierrez v. Girardi, 194 Cal.App.4th 925, 932 (2011).  The breach of fiduciary duty can be based upon either negligence or fraud, depending on the circumstances.  See Salahutdin v. Valley of California, Inc., 24 Cal.App.4th 555, 563 (1994); see also Federal Deposit Ins. Corp. v. McSweeney, 772 F.Supp. 1154, 1157 (S.D.Cal.1991).  Whether a fiduciary duty exists is generally a question of law, while the question of whether the Defendant breach that duty towards the Plaintiff is a question of fact.  Hodges v. County of Placer, 41 Cal.App.5th 537 (2019); Amtower v. Photon Dynamics, Inc., 158 Cal.App.4th 1582, 1599 (2008).

Under California law, a fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent ...." Hodges, 41 Cal.App.5th at 546–547 [citations omitted].  The duty of undivided loyalty the fiduciary owes to its beneficiary is inherent in these relationships, imposing on the fiduciary "obligations far more stringent than those required of ordinary contractors. … Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive is then the standard of behavior." Wolf v. Superior Court, 107 Cal.App.4th 25, 30, *as modified on denial of reh'g* (March 20, 2003) (citation omitted).

Here, Defendants put themselves in a fiduciary position by acting through Defendant BOUDOUVAS, who represented himself as a fiduciary to Plaintiffs.

10

Defendant BOUDOUVAS had a duty to Plaintiffs to act with the utmost good faith for the benefit of Plaintiffs. That duty was breached multiple times, but most egregiously when Defendnat BOUDOUVAS concealed the relationship and intentions of the all Defendants in entering LOAN A and LOAN B. All Defendants contributed to and benefited from that breach of duty, and Plaintiffs were and continue to be significantly harmed. Plaintiffs have distributed large sums of money to Defendants, it has been wronglfully converterd, and yet the SUBJECT PROPERTY is still set for sale.

For this reason, Plaintiffs believe they will succeed on the cause of action for breach of fiduciary duty.

### 4.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

In every contract or agreement there is an implied promise of good faith and fair dealing. Comunale v. Traders & General Ins. Co., 50 Cal.2d 654, 658 (1958). This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract. Id. While the elements are the same as breach of contract, a breach of the covenant of good faith and fair dealing is a separate cause of action.

Defendants conduct constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law. This covenant creates an obligation in Defendants not to hinder or prevent Plaintiffs' ability to perform under the contract. Plaintiffs had an obligation to make monthly payments, and they did so. Defendants had the implicit obligation not to hinder or prevent Plaintiffs' ability to perform under the agreement or hinder Plaintiffs' ability to receive the benefit of the agreement. Likewise, the Defendants have an obligation

11

to deal fairly and in good faith with Plaintiffs.

In the case at hand, Defendants interfered with Plaintiffs' ability to refinance the burdensome LOAN A terms. Defendants purposefully misled Plaintiffs into paying extremely high mortgage payments over a short period of time and Defendant BOUDOUVAS, acting in concert with all defendants, arbitrarily instructed Plaintiffs on when to make payments. Defendants also inflated the amount due by failing to properly apply Plaintiffs' payments properly to interest and principal, allowing principal to remain and interest to accumulate, and failing to account for these actions. Defendants then further artificially inflated the amount due on LOAN A even after Plaintiffs paid $600,000. Defendants proceeded with foreclosure despite timely payments on LOAN A, until Plaintiffs were informed the loan was repaid; timely payments on LOAN B, until Plaintiffs were told to stop pending making payments pending refinancing; and eminent foreclosure after seeking financing outside of this circle of lenders.

For this reason, Plaintiffs believe they will succeed on the cause of action for breach of covenant of good faith.

## 5.    PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS ON THE CLAIM FOR UNJUST ENRICHMENT

In general, a person who has been unjustly enriched at the expense of another is required to make restitution to the other.  Although not required, a valid cause of action arises under Unjust Enrichment when a Defendants receives a benefit they would not have otherwise received at the Plaintiffs' expense.  <u>Ghirardo v. Antonioli</u>, 14 Cal. 4th 39, 51 (1996).

By committing conversion of $193,000.00 plus unjustified interest from Plaintiffs, Defendants have been unjustly enriched to Plaintiffs' detriment.

As a result of the foregoing, Plaintiffs has suffered and continue to suffer damages, including the damage to Plaintiffs' credit resulting from the foreclosure status of his loan, loss of equity, potential loss of property, emotional distress,

1  frustration, fear, anger, helplessness, nervousness, and anxiety. Plaintiffs seeks

2  restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable

3  attorney's fees, injunctive relief, compensatory damages for the loss of equity, and

4  such other and further relief as the Court may deem just and proper.

5     Defendants are guilty of malice, fraud and/or oppression, as defined in

6  California Civil Code § 3294. Defendants' actions were malicious and willful, in

7  conscious disregard of the rights and safety of Plaintiffs and calculated to injure

8  Plaintiffs. Accordingly, Plaintiffs are entitled to recover punitive damages from

9  Defendants pursuant to California Civil Code § 3294, in an amount according to

10  proof.

11     For this reason, Plaintiffs believe they will succeed on the cause of action for

12  unjust enrichment.

13          6.  **VIOLATIONS OF THE FAIR DEBT COLLECTION**

14              **PRACTICES ACT 15 U.S.C. § 1692 *et seq.***

15  Under the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692e(2),

16  a debt collector may not use any false, deceptive, or misleading representation or

17  means in collection of any debt, including by false representing "(A) the character,

18  amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).  Additionally,

19  Lenders are required to disclose in initial written communications that "the debt

20  collector is attempting to collect a debt and any information obtained will be used

21  for that purpose." 15 U.S.C. § 1692(11).

22     Furthermore, under 15 U.S.C. § 1692d, a debt collector may not engage in

23  conduct that results in harassment, oppression, or abuse of any person in connection

24  with the collection of a debt.

25     Any debt collector who fails to comply with any provision of the FDCPA is

26  liable in an amount equal to the sum of (1) any actual damage sustained as the

27  result; (2)(A) in the case of any action by an individual, such additional damages as

28  the court may allow; and (3) in the case of a successful action under the FDCPA,

the costs of the action together with reasonable attorney's fees as determined by the court.

Here, Defendants took ample advantage of the fact that Plaintiffs speak very limited English and could not read the details of the Agreement.  Defendant BOUDOUVAS falsely represented to Plaintiffs (in Greek) that they would obtain refinancing "within a few weeks" to convert their Loan to a traditional mortgage.

Given that Plaintiffs were unable to read the contract or any debt collection notices they received in English, Defendants utterly failed to provide disclosures required by both the Truth in Lending and Consumer Credit Protection Acts, let alone the written notice required by the FDCPA.  However, instead of correcting these flagrant violations as required by 15 U.S.C. § 1640(b) and verbally communicating to the Plaintiffs in the language they understood, Defendants deceptively and abusively took advantage of Plaintiffs in violation of 15 U.S.C. § 1692 et. seq.

As a result of the foregoing, Plaintiff has suffered and continues to suffer damages, including the damage to Plaintiffs credit resulting from the foreclosure status of his loan, loss of equity, potential loss of property, emotional distress, frustration, fear, anger, helplessness, nervousness, and anxiety. Plaintiff seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorney's fees, injunctive relief, compensatory damages for the loss of equity, and such other and further relief as the Court may deem just and proper.

Defendant is guilty of malice, fraud and/or oppression, as defined in California Civil Code § 3294. Defendants' actions were malicious and willful, in conscious disregard of the rights and safety of Plaintiffs and calculated to injure Plaintiffs. Accordingly, Plaintiff is entitled to recover punitive damages from Defendant pursuant to California Civil Code § 3294, in an amount according to proof.

### C.   PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF THIS RELIEF.

Plaintiffs have established that irreparable injury is not only likely, but also imminent, if this temporary restraining order does not issue.  Irreparable injury is an injury "that is not accurately measurable or adequately compensable by money damages."  Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996).   California law presumes that real property is unique and not easily interchangeable.  Real Estate Analytics, LLC v. Vallas, 160 Cal.App.4th 463, 464 (2008); Cal. Civ. Code § 3387; Wheat v. Thomas, 209 Cal. 306 (1930).  In fact, under California law, a foreclosure sale on a person's home is **conclusively** an irreparable harm.  (See Wheat, 209 Cal. 306; Cal. Civ. Code § 3387.  As such, Plaintiffs stands to suffer irreparable harm.

In the case at hand, Plaintiffs have sufficiently pled that the harm is an immediate threat.  Specifically, there is currently a foreclosure sale scheduled for Plaintiffs' Property for December 17, 2020.  Plaintiffs now stands to lose the subject property due to Defendants' misconduct.

### D.   THE BALANCE OF HARDSHIP OVERWHELMINGLY FAVORS PLAINTIFF.

Since the law presumes the loss of real property constitutes irreparable injury, the balance of hardships overwhelmingly favors Plaintiffs. Plaintiffs stands to lose title to the subject property after Defendants' failure to provide Plaintiffs information regarding the true nature of the loans obtained, as well as, Defendants acting in concert to intentionally convert funds from Plaintiffs foreclose on the subject property. If this property is sold to a third-party bona fide purchaser, Plaintiffs will never be able to replace it.  See Cal. Code Civ. Proc. § 526(a)(4) [injunction may issue when pecuniary compensation would not afford adequate relief.)  As such, Plaintiffs stands to suffer irreparable harm.

On the other hand, Defendants faces minimal hardship.  Plaintiffs are only

15

requesting that Defendants refrain from selling Plaintiffs' home until Plaintiffs' causes of action are adjudicated. In fact, California law provides that any injunction shall issue only "until the court determines that the mortgage servicer or beneficiary has corrected and remedied the violation or violations giving rise to the action for injunctive relief." (Cal. Civ. Code § 2924.12(a)(2).) Therefore, Defendants have a built-in mechanism to preserve its rights. Further, the Property is not unique from Defendants' perspective but more like a commodity that Defendants are fraudulently seeking to foreclose on for a profit. Given this, there is little doubt that the balance of hardships overwhelmingly favors Plaintiffs and, therefore, the temporary restraining order should issue.

### E.   THE RELIEF REQUESTED IS IN THE BEST INTEREST OF THE PUBLIC.

Courts "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter v. Natural Resources Defense Counsel, Inc., 555 U.S. 7, 24. (2008). However, the United States has demonstrated a significant interest in regulating the conduct of foreclosure sales, as demonstrated by the creation of the Federal Housing Finance Agency (hereinafter, "FHFA") on July 30, 2008 and Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010's amendments to the Real Estate Settlement Procedures Act of 1974. Furthermore, the United States has shown a particular interest in preventing foreclosure during the COVID-19 public health crisis, as evidenced by the FHFA and Federal Housing Administration's (hereinafter, "FHA") foreclosure and eviction moratorium that has now been extended through December 31, 2020 via the CARES Act. Mortgagee Letter 2020-27 (Aug. 27, 2020), retrieved on Dec. 13, 2020 from https://www.hud.gov/sites/dfiles/OCHCO/documents/2020-27hsgml.pdf; see 53 No. 18 Mortgage & Real Estate Executives Report NL 3.

The State of California has also shown a strong interest in regulating foreclosure sales, most notably by passing the Homeowners Bill of Rights in 2013.

16

More recently, in response to the COVID-19 crisis, the State of California has expanded the Homeowners Bill of Rights to protect borrowers during the present public health emergency to an even greater extent than already provided by the federal government through the CARES Act.

Lastly, it is unclear that a *public* auction can truly be held during skyrocketing and tragic COVID19 infections and increasingly strict shelter-in-place restrictions. Any putatively "public" auction held during the COVID19 pandemic would arguably violate the state's restriction on bid rigging, enshrined in Cal. Civ. Code § 2924h(g).

For these reasons, it would go against public policy to allow the foreclosure sale to go forward on December 17, 2020.

## IV.   **CONCLUSION**

For the reasons set forth herein, good cause exists to grant the instant ex parte application and restrain the foreclosure sale of Plaintiffs' property currently set to take place.

DATED: December 14, 2020                  Respectfully submitted,

MELLEN LAW FIRM

_____
Attorney for Plaintiffs
NIKOLAOS PSARAKIS and
PENAGIOTA PSARAKIS

1

## PROOF OF SERVICE

2  I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I

3  am employed in the City of Alameda, California; my business address is Mellen Law Firm, 1050

4  Marina Village Parkway, Suite 102, Alameda, CA 94501.

5  On the date below, I served a copy of the foregoing documents entitled:

6  **EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER;**
   **MEMORANDOM OF POINTS AND AUTHORITIES IN SUPPORT OF EX**
7  **PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**

8  **MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION**

9  **COMPLAINT FOR DAMAGES & EQUITABLE RELIEF**

10 **DECLARATION OF MICHAEL XYNTARAS IN SUPPORT OF EX PARTE**
11 **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

12 On the interested parties in this action by placing true and correct copies thereof enclosed in a

13 sealed envelope with postage prepaid in the United States Mail in San Francisco, California,

14 addressed as follows:

| | |
|---|---|
| CSC – Lawyers Incorporating Service<br>2710 Gateway Oaks Drive, Ste. 150N<br>Sacramento, CA 95833<br><br>*Agent for Service of Process for World Business Lenders, LLC* | Robert J. Cullen<br>3550 Round Barn Blvd., Ste. 203<br>Santa Rosa, CA 95403<br><br>*Agent for Service of Process for Redwood Trust Deed Services, Inc.* |
| Peter Boudouvas<br>4 Sharp Rd.<br>Edison, NJ 08837<br><br>*Potential address for Defendant Peter Boudouvas.* | |

24  I declare under penalty of perjury under the laws of the State of California that the

25 foregoing is true and correct. This declaration is executed in San Francisco, California on

26 December 14, 2020.

27  Elizabeth B. Cermak

28